UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICE M. EUESDEN,

                                              Case No.: 19-11059

v.                                   Honorable Gershwin A. Drain

BANK OF AMERICA, N.A.,

      Defendant.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION [#6], SETTING ASIDE STAY OF FORECLOSURE SALE AND DENYING DEFENDANT'S EMERGENCY MOTION FOR LEAVE TO FILE SUR-REPLY [#12]</u>**

**I.    INTRODUCTION**

On April 12, 2019, Defendant Bank of America, N.A., successor by merger with LaSalle Bank Midwest, N.A., removed the instant wrongful foreclosure action from the Macomb County Circuit Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

On May 10, 2019, Plaintiff Alice Euesden filed an Ex Parte Motion for Entry of Temporary Restraining Order and Motion for Preliminary Injunction. Plaintiff seeks an order restraining Defendant and the Macomb County Sheriff from proceeding with the sheriff's sale of her Richmond, Michigan home. The Court ordered the Defendant to file a Response to Plaintiff's present motion and Defendant filed its Response on May 14, 2019. On May 16, 2019, this Court

entered an order staying the sheriff's sale. The Court's May 16, 2019 Order also required Plaintiff to file a Reply in support of her present motion. On May 20, 2019, Plaintiff filed her Reply brief.[1] A hearing on this matter was held on May 30, 2019.[2]

For the reasons that follow, Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order and Motion for Preliminary Injunction is denied and the stay of the sheriff's sale is set aside.

## II. FACTUAL BACKGROUND

The instant action stems from Plaintiff's application for a home equity line of credit with LaSalle Bank, N.A. around January of 2008. Plaintiff claims she applied for the line of credit because she was about to undergo back surgery and she wanted to make certain that she had sufficient means of paying anticipated medical bills associated with her surgery and hospitalization.

---

[1] In her Reply brief, Plaintiff indicates that on May 17, 2019 she contacted the Macomb Legal News to verify that the Sheriff's sale scheduled for that date had been adjourned. An employee for the Legal News indicated that the sheriff's sale had been canceled pursuant to instructions from the Trott law firm, which represents the Defendant in the foreclosure proceedings. At the hearing, Defendant's counsel indicated that the sale had not been canceled. Rather, it was adjourned pursuant to this Court's May 16, 2019 Order.

[2] The day before the hearing on this matter, Defendant filed an Emergency Motion for Leave to File Sur-Reply arguing that Plaintiff's Reply brief exceeded the page limit set forth in the Court's local rules, as well as raised new arguments and attached new exhibits. Upon review of the Defendant's Emergency Motion, the Court concludes that Defendant has failed to demonstrate good cause for granting the requested relief. Accordingly, the Court will deny Defendant's Emergency Motion for Leave to File Sur-Reply.

On January 15, 2008, Plaintiff executed a Credit Line Agreement with LaSalle Bank. As security for the line of credit, Plaintiff executed and conveyed to LaSalle Bank a mortgage on her residence located in Richmond, Michigan. In October of 2008, LaSalle Bank merged with Bank of America.

Plaintiff began receiving social security benefits shortly after undergoing back surgery. She therefore asserts that she did not have to draw upon the line of credit for payment of her medical expenses to the extent she had previously anticipated. Plaintiff believes she drew $2,600.00 on the line of credit since 2008. Plaintiff has diligently made payments; however, she did not realize for many years that her account statements listed a principal balance of $50,000.00 even though she believed she only owed around $2,600.00.

On October 13, 2017, Defendant sent a letter to Plaintiff stating that her home equity line of credit balloon was scheduled to end on January 15, 2018. On November 13, 2017, Defendant sent Plaintiff a letter along with a copy of a property valuation. The letter requested that Plaintiff contact Defendant's Consumer Loan Center if she had any questions. Plaintiff attempted to obtain more information when she contacted the Loan Center, however she did not receive any meaningful assistance.

In December of 2017, Plaintiff visited Defendant's 23 Mile Road branch office in Chesterfield Township. She met with a bank employee named Danuta,

who recommended that Plaintiff apply for a $100,000.00 line of credit and execute a new mortgage. When Plaintiff asked Danuta for copies of the documents supporting Defendant's contention that Plaintiff had withdrawn $50,000.00 on the line of credit, Danuta indicated that those records were no longer available because they were more than ten years old.

On January 9, 2018, Defendant furnished Plaintiff with a copy of an Account Transaction History dated December 28, 2017. The Account Transaction History states that an advance of $49,784.37 was made on January 24, 2008, and additional advances of $1,000.00, $600.00 and $1,000.00 were made on January 31, 2008, March 12, 2008 and April 7, 2008. Plaintiff believes she received the latter three advances totaling $2,600.00. Plaintiff does not recall receiving the alleged $49,784.37 advance. The Account Transaction History also lists more than $14,000.00 in payments on the line of credit received by Defendant from February of 2008 through December of 2017. Defendant maintains that the $49,784.37 advance was immediately used to pay off a loan Plaintiff took out in 2003.

Defendant also supplied an excerpt from a Settlement Statement dated January 15, 2008. The Settlement Statement indicates that $50,058.64 was disbursed to LaSalle Bank Midwest N.A. for loan number 9048311718. The Settlement Statement contains a signature that appears to be that of Plaintiff, however the signature is undated, the document is missing one or more pages and

the page on which the signature appears is mostly illegible and contains numbered lines that do not follow in sequence. Additionally, the Settlement Statement indicates that the place of settlement was LaSalle Bank's Troy branch, however Plaintiff never visited that branch. She only transacted business at the branch office located in Richmond, Michigan. Based on these irregularities, Plaintiff believes that the Settlement Statement was pieced together from other documents and its reliability and authenticity are suspect.

Plaintiff hired counsel who sent correspondence on March 9, 2018 to Defendant's Billing Error Notice department in Simi, California. Counsel's letter summarized Plaintiff's recollections of the January 2008 transaction, referenced Defendant's failure to provide Plaintiff with copies of her credit application, cashier's checks or other documents evidencing the amount of advances she obtained. Counsel also indicated that Plaintiff would not make any more payments until the dispute was resolved and requested that all future communications be forwarded to counsel.

On March 29, 2018, Defendant's Home Loans office in Tampa, Florida sent a form reply letter to Plaintiff's counsel which informed counsel that his authorization request was declined because it was neither a court order nor a power of attorney. Thereafter, counsel drafted a Durable Power of Attorney which was executed by Plaintiff and notarized. However, Defendant declined the Durable

Power of Attorney because it was purportedly "incomplete, altered and/or illegible."

On June 4, 2018, Plaintiff's counsel sent a letter to Defendant's Home Loans office in Tampa. In the letter, counsel stated that he did not understand why the Durable Power of Attorney was rejected because it had been drafted in accordance with Michigan law and it was neither incomplete, altered or illegible. Counsel requested that Defendant contact him within five business days to discuss the matter, however counsel was never contacted. Rather, on June 6, 2018, Defendant sent a letter to Plaintiff stating that it had made several attempts to contact Plaintiff by telephone, without success.

Finally, on July 26, 2018, Defendant sent a letter to Plaintiff's counsel indicating that it had completed the request to authorize Plaintiff's counsel as "Power of Attorney" on Plaintiff's account. Yet, when counsel attempted to obtain additional information concerning Plaintiff's line of credit, Defendant failed to provide any additional information or the copies of documents that had been first requested in March of 2018.

On October 23, 2018, Defendant sent a Notice to Plaintiff which stated that the principal balance on the line of credit was $51,749.17 and interest of $1,998.36 had accrued as of November 23, 2018. Defendant indicated that it may foreclose upon the mortgage it held on Plaintiff's residence unless the balance was paid off

by December 2, 2018. On December 7, 2018, Plaintiff's counsel sent a letter to Defendant's General Counsel and Secretary, JoAnn Carlton, which referenced the October 23, 2018 Notice, set forth Plaintiff's concerns and questions regarding the amount which Defendant claimed to be owed on the line of credit, requested that Defendant cease further attempts to contact Plaintiff directly and repeated her request for documentary proof of Plaintiff's outstanding balance. Ms. Carlton failed to reply to counsel's letter.

On December 21, 2018, Defendant sent a letter to Plaintiff informing her that Defendant intended to commence foreclosure proceedings against Plaintiff's residence and referenced a 30-day period for Plaintiff to dispute the amount of the debt. Counsel sent a January 16, 2019 letter to Defendant indicating that Plaintiff did dispute the amount. In response, Defendant sent a letter to Plaintiff's counsel on January 28, 2019. This letter enclosed documents pertaining to Plaintiff's line of credit, including a copy of the Assistant Secretary's Certificate of Bank of America, a Line of Credit Agreement and Disclosure dated January 15, 2008 and a future advance mortgage, the latter of which Plaintiff purportedly executed. The terms of the Agreement stated that Plaintiff would receive a revolving line of credit in the amount of $60,000.00 and that the term of the line of credit would continue until January 15, 2018, at which time it would mature. While the Agreement purports to contain Plaintiff's signature, Plaintiff recalls that

the documents she signed in January of 2008 were each in the principal amounts of $10,000.00, not $60,000.00.

On February 1, 2019, Plaintiff's counsel sent a letter to Defendant asking for copies of "any and all checks or other documents which evidence monies advanced to [the Plaintiff] under the line of credit." Defendant has failed to provide copies of the requested documents.

**III. LAW & ANALYSIS**

**A. Standard of Review**

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *See Sandison v. Michigan High School Athletic Assoc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). The four factors that must be balanced and considered before the court may issue a temporary restraining order or preliminary injunction include: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the

injunction is granted; and (4) whether the injunction would serve the public interest. *Certified Restoration*, 511 F.3d at 542; *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

"None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001). It is well settled that, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

The party moving for injunctive relief has the burden to show that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a motion for summary judgment." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

**B. Likelihood of Success on the Merits**

Defendant argues that Plaintiff cannot establish a likelihood of success on the merits of her wrongful foreclosure and Michigan Collection Practices Act claims.

Plaintiff's wrongful foreclosure claim is based on her assertion that she "does not recall receiving the alleged $49,784.37 advance" on her loan, and "believes that she received . . . three advances totaling $2,600." While Plaintiff concedes that the signatures on the Credit Line Agreement and mortgage appear to be hers, she "recalls that the documents she signed in January of 2008 were each in the principal amounts of $10,000, not $60,000." She also argues that Defendant cannot foreclose because she made payments that total "more than $14,000" on the line of credit.

In order to plead a claim for wrongful foreclosure, Plaintiff must show that Defendant is not entitled to foreclose. Yet, the exhibits provided by the parties— the Account Transaction History and the Settlement Statement— show that she received nearly $50,000 when the line of credit was opened, and three additional advances totaling $2,600 over the next three months. The Settlement Statement shows that nearly $50,000 was immediately disbursed to pay off a prior loan.

Plaintiff counters that Defendant has not produced sufficient proof such as a canceled home equity credit line check made payable to Plaintiff or a receipt

evidencing an actual advance of funds.  Thus, she claims she is likely to succeed on the merits of her claims. Plaintiff does not explain why the documents provided by Defendants are insufficient to establish Plaintiff's receipt of the bulk of the 2008 loan in January of 2008.   Because initial disbursement of roughly $50,000 was directly paid to LaSalle Bank to release an existing lien on her property from a 2003 loan, Plaintiff would not have received a check for the funds.

The Account Transaction History also shows that Plaintiff made mostly interest only payments from February of 2008 through December of 2017.  Only $635.18 of her payments was applied to the principal balance during the life of the loan.  Because Plaintiff failed to pay the principal amount before maturity of the loan on January 15, 2018, she appears to have defaulted pursuant to the terms of the Termination and Acceleration Clause of the Credit Line Agreement.  The Mortgage also calls for the acceleration of debts upon default, including the lender's right to invoke the power of sale.

Defendant maintains that the foreclosure by advertisement was initiated according to Michigan's foreclosure by advertisement statute, MICH. COMP. LAWS § 600.3201 *et seq.*, which requires notice of default and the pending foreclosure sale to be posted and published.

Accordingly, the evidence before the Court demonstrates that Plaintiff is not likely to succeed on the merits of her wrongful foreclosure claim.

As to Plaintiff's claim that Defendant violated Michigan's Collection Practices Act, MICH. COMP. LAWS § 455.903, Defendant argues that it is not a "collection agency" which is defined as a "person directly engaged in collecting or attempting to collect a claim owed or due or asserted to be owed or *due another* . . . ." MICH. COMP. LAWS § 445.251(1)(b) (emphasis supplied). Therefore, Defendant argues Plaintiff's Michigan Collection Practices Act claim fails because Defendant is attempting to collect its own debt, not the debt of another. *See Montgomery v. Huntington Bank*, No. 234182, 2002 WL 31296642 (Mich. Ct. App. Oct. 11, 2002).

However, Plaintiff argues that Defendant's actions are violations of the Act because Defendant is a "regulated person" or "a person whose collection activities are confined and are directly related to the operation of a business other that of a collection agency including any of the following: … (ii) a state or federally chartered bank that collects its own claim." MICH. COMP. LAWS § 445.251(1)(g)(ii). Thus, as a regulated person under the Act, Defendant was required to communicate with Plaintiff's counsel, rather than Plaintiff, however Defendant continuously sent communications to Plaintiff even after accepting counsel's Power of Attorney. Plaintiff therefore argues that Defendant has violated MICH. COMP. LAWS § 445.252(h) which states:

A regulated person shall not commit 1 or more of the following acts:

* * * * *

> Communicating with a debtor, except through billing procedure when the debtor is actively represented by an attorney, the attorney's name and address are known, and the attorney has been contacted in writing by the credit grantor or the credit grantor's representative or agent, unless the attorney representing the debtor fails to answer written communication or fails to discuss the claim on its merits within 30 days after receipt of the written communication.

MICH. COMP. LAWS § 445.252(h).

Upon review of the Defendant's correspondence to Plaintiff, the Court finds that Plaintiff is not likely to establish her claim. It appears that Defendant's correspondence was either through billing procedure or notices about the foreclosure process that are required by Michigan law. These communications do not appear to violate the Act. *See* MICH. COMP. LAWS § 445.904(1)(a) ("A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or of the United States" is exempt from the Michigan Collections Practices Act); *see also Newton v. Bank West*, 262 Mich. App. 434, 438-39; 686 N.W.2d 491 (2004) (holding that the Act exempts actions relating to mortgage loan transactions).

Based on the above considerations, Plaintiff is unlikely to succeed on the merits of her claims. This factor favors the Defendant.

## B. Irreparable Harm

Defendant argues that Plaintiff cannot show irreparable harm if she cannot establish a right to retain possession of her residence. Defendant further asserts that it will be harmed if Plaintiff is permitted to avoid her obligation to pay pursuant to the 2008 line of credit agreement she executed.

Plaintiff argues that she will suffer irreparable harm if she loses her home. *See McDonald v. Green Tree Servicing, LLC*, No. 13-cv-12993, 2013 WL 3817430 (E.D. Mich. Jul. 23, 2013) ("Generally, because a piece of real property is unique, its loss has been considered irreparable injury."). However, if the foreclosure sale proceeds, Plaintiff will still have a six month redemption period to redeem the mortgage. Courts in this circuit have concluded that there is no irreparable harm from a foreclosure sale where the plaintiff has a six-month redemption period to redeem the mortgage. *See Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 339 F. Appp'x 97, 104 (6th Cir. 2010); *Sheldon v. Vilsack*, No. 11-10487, 2011 U.S. Dist. LEXIS 13775, *6-7 (E.D. Mich. Feb. 11, 2011); *Waldowski v. Chevy Chase Bank, F.S.B.*, No. 1:07-CV-961, 2007 U.S. Dist. LEXIS 76288, *3-4 (W.D. Mich. Oct. 12, 2007).

Here, the Court concludes that the circumstances before this Court do not amount to irreparable harm. Plaintiff is unable to demonstrate a likelihood of success on her wrongful foreclosure claim because she cannot establish a right to

remain in possession of the home. Moreover, she will have a six-month redemption period within which to redeem the mortgage.

**C. Harm to Others and Public Interest**

Plaintiff further argues that there will be no harm to Defendant if the Court enters a preliminary injunction because Defendant has failed to produce any evidence that the property is in danger of being wasted or diminished in value.

Plaintiff argues that the public interest will be served if a preliminary injunction is granted. To date, Defendant has failed to produce documents evidencing she received the bulk of the 2008 loan. It is not in the public interest to allow Defendant to avoid Plaintiff's repeated requests for this documentation.

Here, preliminarily enjoining the foreclosure sale and denying Defendant the right to collect payments in accordance with the Credit Line Agreement is not in the public interest. "[P]ublic policy does not favor allowing a borrower to avoid its contractual obligations, particularly where [the borrower] cannot satisfy the other preliminary injunction facts." *Livonia Property Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, No. 10-1782, 399 F. App'x 97, 2010 WL 4275305, at *6 (6th Cir. Oct. 28, 2010).

Because Plaintiff cannot establish she is likely to succeed on the merits of her claims nor demonstrate any of the other factors are balanced in her favor, her request for the extraordinary remedy of injunctive relief must be denied. *See*

*Gonzales*, 225 F.3d at 625 (holding that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."). Plaintiff has not met her "burden to show that the circumstances clearly demand" injunctive relief. *Overstreet*, 305 F.3d at 573.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Plaintiff's Ex Parte Motion for Temporary Restraining Order and Motion for Preliminary Injunction [#6] is DENIED.

The STAY of the sheriff's sale set forth in this Court's May 16, 2019 Order [Dkt. No. 10] is SET ASIDE.

Defendant's Emergency Motion for Leave to File Sur-Reply [#12] is DENIED.

SO ORDERED.

Dated: June 3, 2019

                                     s/Gershwin A. Drain
                                     HON. GERSHWIN A. DRAIN
                                     United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
June 3, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager